SEALED

NORTHERN DISTRICT OF TEXAS
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MAY - 6 2015

CLERK, U.S. DISTRICT COURT

By _____
Deputy

**ORIGINAL**

UNITED STATES OF AMERICA

v.

GAS PIPE, INC. (7)
AMY LYNN, INC. (8)
GERALD SHULTS (9)
    (a.k.a. "Jerry")
AMY HERRIG (10)
ROLANDO ROJAS (11)
    (a.k.a. "Ro")
RYAN YARBRO (12)
JOHN BEN LINCOLN (13)
CHRISTOPHER RAMIREZ (14)
DANIEL CAILLIER (15)
KENDALL SILVA (16)
ELIZABETH WALKER (17)
BRIDGETT PAYROT (18)
JASON LYON (19)
JOSHUA CAMPBELL (20)
MICK CLARK (21)
BRANDON SCHUBERT (22)
JACKIE RANDALL-KING (23)
HOLLY PATTERSON (24)
BRAD BADER (25)
TRAVIS LOVIN (26)
JENNIFER DUNN (27)
PATRICK SHANAHAN (28)
CAROLYN SETTLEMIRE (29)
TOM SCOTT (30)
RAPIDS CAMP LODGE, INC. (31)
RIDGLEA COMPLEX MANAGEMENT,
INC. (32)

**TO BE FILED UNDER SEAL**

Criminal No. 3:14-CR-298-M
**(Supersedes Indictment returned on August 5, 2014)**

## SUPERSEDING INDICTMENT

The Grand Jury Charges:

Indictment – Page 1

Introduction

At all times material to this indictment:

1.     **Gerald (a.k.a. "Jerry") Shults** owned **Gas Pipe, Inc.** and **Amy Lynn, Inc.**, which maintained locations throughout Texas and New Mexico, including locations in Austin, Albuquerque, Arlington, Dallas, Fort Worth, Garland, and Plano.

2.     **Gas Pipe, Inc.** and **Amy Lynn, Inc.** sold millions of dollars in products commonly referred to as "spice" in the "designer" or synthetic drug market. "Spice" is a common street term referring to a smokeable organic plant substance that has been combined with a synthetic cannabinoid. The synthetic cannabinoids contained in the "spice" distributed by **Gas Pipe, Inc.** and **Amy Lynn, Inc.** was typically considered Schedule I controlled substances or controlled substance analogues. In an effort to perpetuate an illusion of legality surrounding their distribution of "spice," **Gas Pipe, Inc.** and **Amy Lynn, Inc.** marketed and sold these products as "herbal incense," "potpourri," or "aroma therapy products," to the general public throughout Texas and New Mexico, claiming these products were "not for human consumption."

3.     **Amy Herrig** is the daughter of **Gerald (a.k.a. "Jerry") Shults** and was the "the lady who [ran] the Gas Pipe."

4.     **Rolando (a.k.a. "Ro") Rojas** served as the General Manager of **Gas Pipe, Inc.** and was the "person in charge" when **Amy Herrig** and **Gerald (a.k.a. "Jerry") Shults** were not available.

5.     **Ryan Yarbro** served as the buyer for **Amy Lynn, Inc.** and **Gas Pipe, Inc.** and was in charge of **Amy Lynn, Inc.'s** manufacturing of "spice."

6.     **John Ben Lincoln, Christopher Ramirez**, and **Daniel Caillier** served as area managers of various **Gas Pipe, Inc.** retail locations.

7.     **Kendall Silva** served as the store manager for the **Gas Pipe, Inc.** retail location located at 4420 Maple, Dallas, Texas.

8.     **Elizabeth Walker** served as the store manager for the **Gas Pipe, Inc.** retail location located at 9515 Skillman, Dallas, Texas.

9.     **Bridgett Payrot** served as the store manager for the **Gas Pipe, Inc.** retail location located at 1407 N. Collins, Arlington, Texas.

10.     **Jason Lyon** served as the store manager for the **Gas Pipe, Inc.** retail location located at 701 E. 5th Street, Austin, Texas.

11.     **Joshua Campbell** served as the store manager for the **Gas Pipe, Inc.** retail location located at 8508 Central SE, Albuquerque, New Mexico.

12.     **Mick Clark** served as the store manager for the **Gas Pipe, Inc.** retail location located at 8519 Burnet Road, Austin, Texas.

13.     **Brandon Schubert** served as the store manager for the **Gas Pipe, Inc.** retail location located at 18613 Marsh Lane, Dallas, Texas;

14.     **Jacqueline Randall-King** served as the store manager for the **Gas Pipe, Inc.** retail location located at 1725 N. Central, Plano, Texas.

15.     **Holly Patterson** served as the store manager for the **Gas Pipe, Inc.** retail location located at 6033 Camp Bowie, Fort Worth, Texas;

16.     **Brad Bader** served as the store manager for the **Gas Pipe, Inc.** retail location located at 2053 W. Northwest Highway, Dallas, Texas;

17.     **Travis Lovin** served as the store manager for the **Gas Pipe, Inc.** retail location located at 130 E. Bardin Road, Arlington, Texas;

18.     **Jennifer Dunn** served as the store manager for the **Gas Pipe, Inc.** retail location located at 5707 Broadway, Garland, Texas;

19.     **Patrick Shanahan** served as the store manager for the **Gas Pipe, Inc.** retail location located at 8521 Golf Course, Albuquerque, New Mexico;

20.     **Carolyn Settlemire** served as the office manager and bookkeeper for **Amy Lynn, Inc.** and **Gas Pipe, Inc.**

21.     **Thomas Scott** served as a general contractor for **Gas Pipe, Inc.** and **Amy Lynn, Inc.'s** building projects.  In addition, **Thomas Scott** provided supplies for the sole purpose of manufacturing and producing the "spice" distributed by **Gas Pipe, Inc.** and **Amy Lynn, Inc.**

22.     The United States Food and Drug Administration ("FDA") is the federal agency of the United States charged with protecting the health and safety of the American public by ensuring that drugs sold to the public are safe and effective for their intended uses and that the drugs bear labeling that enables consumers to use them in a safe manner.  The FDA's responsibilities include regulating the manufacturing, labeling, and distribution of drugs shipped or received in interstate commerce.

23.     To legally introduce, deliver for introduction, or cause the delivery or introduction for delivery of a drug into interstate commerce, all persons are required to comply with all applicable provisions of the federal Food, Drug and Cosmetic Act

("FDCA") and its implementing regulations found in Title 21 of the Code of Federal Regulations.

24.     Under the FDCA, drugs are defined as, among other things, articles intended for use in the cure, mitigation, treatment or prevention of disease in people; articles (other than food) intended to affect the structure or function of the human body; and articles intended for use as components of drugs.  The FDCA prohibits the introduction of misbranded drugs into interstate commerce.

25.     A drug is misbranded unless its labeling bears adequate directions for all intended uses under 21 U.S.C. § 352(f).  Drugs that lack any directions for use are misbranded per se.  A drug is also misbranded if its labeling is false or misleading in any particular way under 21 U.S.C. § 352(a).  False assertions in labeling accompanying products during importation can also render a drug misbranded.

26.     It is a violation of 21 U.S.C. § 331(a) to cause the introduction and delivery for introduction into interstate commerce any drug that is adulterated and misbranded.

Count One
Conspiracy to Defraud the United States
(Violation of 18 U.S.C. § 371)

27.     The allegations in paragraphs 1 – 26 are incorporated by reference as if fully rewritten herein.

28.     From at least on or about March 1, 2011 and continuing until on or about June 4, 2014, in the Northern District of Texas and elsewhere, the defendants **Gas Pipe, Inc., Amy Lynn, Inc., Gerald (a.k.a. "Jerry") Shults, Amy Herrig, Rolando (a.k.a. "Ro") Rojas, Ryan Yarbro, John Ben Lincoln, Christopher Ramirez, Daniel Caillier, Kendall Silva, Elizabeth Walker, Bridgett Payrot, Jason Lyon, Joshua Campbell, Mick Clark, Brandon Schubert, Jackie Randall-King, Holly Patterson, Brad Bader, Travis Lovin, Jennifer Dunn, Patrick Shanahan, Carolyn Settlemire,** and **Thomas Scott,** did knowingly conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury, to defraud the United States Food and Drug Administration ("FDA"), an agency of the United States, for the purpose of impeding, impairing, obstructing, and defeating their lawful governmental functions of regulating drug labeling and approving new drugs, before introduction into interstate commerce; and to commit certain offenses against the United States, that is to violate 21 U.S.C. §§ 331, 333(a)(2), and 352 by introducing or delivering an adulterated or misbranded drug into interstate commerce with the intent to defraud or mislead.

**Manner and Means of the Conspiracy**

29.     As part of the conspiracy to defraud, the defendants purchased, possessed, packaged, labeled, marketed, distributed and sold substances containing synthetic

cannabinoids such as:  AM-2201; JWH-250, UR-144, XLR-11, PB-22; 5F-PB-22, FUB-PB-22, THJ-2201 and AB-FUBINACA throughout the Northern District of Texas and elsewhere.

30.     It was further part of the conspiracy to defraud that the defendants would purchase prepackaged "spice" from manufacturers both in Texas and across the country. These "spice" products would then be delivered to the **Gas Pipe, Inc.** and **Amy Lynn, Inc.** warehouse located at 5800 Maple, Dallas, Texas, prior to being distributed to each of the Gas Pipe, Inc. retail locations.  These "spice" products would ultimately be marketed, distributed, and sold labeled as "herbal incense," "potpourri," or "aroma therapy products" under brand names such as:  "Headhunter," "Black Label," "Scentsi Star," "Assassin Revolution," "Afghan Ice," "No More Mr. Nice Guy," "Sour D," "iBlown," "Venom," "WTF," "Apollo 13," "Trinity," "Alien," and "Plur."  Each of these products were labeled "not for human consumption" and many stated "100% synthetic cannabinoid free" even though each of these products contained a synthetic cannabinoid that the defendants intended for human consumption as a drug.

### Overt Acts of the Conspiracy

31.     To effect the object of the conspiracy, the defendants and others performed overt acts in the Northern District of Texas and elsewhere, including but not limited to the following acts:

a.  On or about November 22, 2013, undercover officers purchased "spice" labeled as "Assassin Revolution" from the Gas Pipe retail location at 1407 Collins Street, Arlington, Texas.  The packaging failed to contain adequate labeling and/or contained

false information such as: "not for human consumption," "keep out of reach of children," and "for aromatherapy use only" when in fact it contained the synthetic cannabinoid AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

b.  On or about November 22, 2013, undercover officers purchased "spice" labeled as "Assassin Revolution" from the Gas Pipe retail location at 130 E. Bardin Road, Arlington, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption," "keep out of reach of children," and "for aromatherapy use only" when in fact it contained the synthetic cannabinoid and Schedule I controlled substance XLR-11, and the product was intended for individuals to smoke and ingest;

c.  On or about December 4, 2013, undercover officers purchased "spice" labeled as "Apollo 13" from the Gas Pipe retail location at 8508 Central Avenue SE, Albuquerque, New Mexico.  The packaging failed to contain adequate labeling and/or contained false information such as: "for aromatherapy only," and "not for humans to consume, ingest, or inhale," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance analogue PB-22, and the product was intended for individuals to smoke and ingest;

d.  On or about December 4, 2013, undercover officers purchased "spice" labeled as "Venom" from the Gas Pipe retail location at 8521 Golf Course Road, Albuquerque, New Mexico.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption" and "this product does not contain any cannabinoids or controlled substances," when in fact it contained the

synthetic cannabinoids and Schedule I controlled substances UR-144 and XLR-11, and the product was intended for individuals to smoke and ingest;

e.  On or about December 11, 2013, undercover officers purchased "spice" labeled as "LV" from the Gas Pipe retail location at 1725 Central Expressway, Plano, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "premium blend potpourri," "not for sale to minors," "not for human consumption," and "50 state legal premium potpourri," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance XLR-11, and the product was intended for individuals to smoke and ingest;

f.  On or about December 11, 2013, undercover officers purchased "spice" labeled as "Afghan Ice" from the Gas Pipe retail location at 18613 Marsh Lane, Suite 500, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption," "lab certified," "this product does not contain…any illegal substances," and "this product is in compliance with all federal laws," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance XLR-11, and the product was intended for individuals to smoke and ingest;

g.  On or about December 11, 2013, undercover officers purchased "spice" labeled as "WTF" from the Gas Pipe retail location at 18613 Marsh Lane, Dallas, Texas. The packaging failed to contain adequate labeling and/or contained false information such as: "lab certified legal," and "this product is designed, marketed, and sold strictly as potpourri and is not for human consumption…intended for adult use only, keep away

from children" when in fact it contained the synthetic cannabinoid and Schedule I controlled substance XLR-11, and the product was intended for individuals to smoke and ingest;

h.  On or about December 11, 2013, undercover officers purchased "spice" labeled as "Afghan Ice" from the Gas Pipe retail location at 4420 Maple Avenue, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption," "lab certified," "this product does not contain...any illegal substances," and "this product is in compliance with all federal laws," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance XLR-11, and the product was intended for individuals to smoke and ingest;

i.  On or about December 11, 2013, undercover officers purchased "spice" labeled as "Black Label" from the Gas Pipe retail location at 4420 Maple Avenue, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption" and "100% synthetic cannabinoid free," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance XLR-11, and the product was intended for individuals to smoke and ingest;

j.  On or about December 16, 2013, undercover officers purchased "spice" labeled as "Sour D" from the Gas Pipe retail location at 9515 Skillman Street, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption" and "100% synthetic cannabinoid free," when in fact it contained the synthetic cannabinoid AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

k.  On or about December 16, 2013, undercover officers purchased "spice" labeled as "WTF" from the Gas Pipe retail location at 9515 Skillman Street, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "lab certified legal," and "this product is designed, marketed, and sold strictly as potpourri and is not for human consumption…intended for adult use only, keep away from children" when in fact it contained the synthetic cannabinoid AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

l.  On or about December 16, 2014, undercover officers purchased "spice" labeled as "Forty-Two Degrees" from the Gas Pipe retail location at 2053 W. Northwest Highway, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption" and "100% synthetic cannabinoid free," when in fact it contained the synthetic cannabinoid AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

m.  On or about December 17, 2013, undercover officers purchased "spice" labeled as "Venom" from the Gas Pipe retail location at 6033 Camp Bowie Blvd., Fort Worth, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption" and "this product does not contain any cannabinoids or controlled substances," when in fact it contained the synthetic cannabinoid AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

n.  On or about December 17, 2014, undercover officers purchased "spice" labeled as "iBlown" from the Gas Pipe retail location at 6033 Camp Bowie Blvd., Fort

Worth, Texas.  The packaging failed to contain adequate labeling and/or contained false

information such as: "this product contains no banned substances," "this package

contains a proprietary blend or organic herbs combined with artificial extracts and

colors…," "not for human consumption" and "for aromatherapy use only," when in fact it

contained the synthetic cannabinoid and Schedule I controlled substance XLR-11, and the

product was intended for individuals to smoke and ingest;

o.  On or about December 18, 2014, undercover officers purchased "spice"

labeled as "Forty-Two Degrees" from the Gas Pipe retail location at 701 5th Street,

Austin, Texas.  The packaging failed to contain adequate labeling and/or contained false

information such as: "not for human consumption" and "100% synthetic cannabinoid

free," when in fact it contained the synthetic cannabinoid AB-FUBINACA, and the

product was intended for individuals to smoke and ingest;

p.  On or about December 18, 2014, undercover officers purchased "spice"

labeled as "iBlown" from the Gas Pipe retail location at 701 5th Street, Austin, Texas.

The packaging failed to contain adequate labeling and/or contained false information

such as: "this product contains no banned substances," "this package contains a

proprietary blend or organic herbs combined with artificial extracts and colors…," "not

for human consumption" and "for aromatherapy use only," when in fact it contained the

synthetic cannabinoid AB-FUBINACA, and the product was intended for individuals to

smoke and ingest;

q.  On or about December 18, 2014, undercover officers purchased "spice"

labeled as "Scentsi Star" from the Gas Pipe retail location at 8519 Burnet Road, Austin,

Texas.  The packaging failed to contain adequate labeling and/or contained false

information such as: "not for human consumption" and "100% synthetic cannabinoid

free," when in fact it contained the synthetic cannabinoid and Schedule I controlled

substance XLR-11, and the product was intended for individuals to smoke and ingest;

  r. On or about January 7, 2014, undercover officers purchased "spice" labeled

as "No More Mr. Nice Guy" from the Gas Pipe retail location at 8508 Central Avenue

SE, Albuquerque, New Mexico.  The packaging failed to contain adequate labeling

and/or contained false information such as: "100% synthetic cannabinoid free," "not

made for human consumption," when in fact it contained the synthetic cannabinoid AB-

FUBINACA, and the product was intended for individuals to smoke and ingest;

  s. On or about March 4, 2014, undercover officers purchased "spice" labeled

as "Assassin Revolution" from the Gas Pipe retail location at 1407 Collins Street,

Arlington, Texas.  The packaging failed to contain adequate labeling and/or contained

false information such as: "not for human consumption," "keep out of reach of children,"

and "for aromatherapy use only" when in fact it contained the synthetic cannabinoid and

Schedule I controlled substance AB-FUBINACA, and the product was intended for

individuals to smoke and ingest;

  t. On or about March 4, 2014, undercover officers purchased "spice" labeled

as "Alien Loose Leaf" from the Gas Pipe retail location at 1407 Collins Street, Arlington,

Texas.  The packaging failed to contain adequate labeling and/or contained false

information such as: "not for human consumption" and "this product does not

contain...any synthetic or naturally occurring cannabinoids," when in fact it contained

the synthetic cannabinoid and Schedule I controlled substance analogue FUB-PB-22, and the product was intended for individuals to smoke and ingest;

u.  On or about March 10, 2014, undercover officers purchased "spice" labeled as "Assassin Revolution" from the Gas Pipe retail location at 6033 Camp Bowie Blvd., Fort Worth, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption," "keep out of reach of children," and "for aromatherapy use only" when in fact it contained the synthetic cannabinoid and Schedule I controlled substance AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

v.  On or about March 10, 2014, undercover officers purchased "spice" labeled as "Assassin Revolution" from the Gas Pipe retail location at 130 E. Bardin Road, Arlington, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption," "keep out of reach of children," and "for aromatherapy use only" when in fact it contained the synthetic cannabinoid and Schedule I controlled substance AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

w.  On or about March 11, 2014, undercover officers purchased "spice" labeled as "Assassin Revolution" from the Gas Pipe retail location at 4420 Maple Avenue, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption," "keep out of reach of children," and "for aromatherapy use only" when in fact it contained the synthetic cannabinoid and

Schedule I controlled substance AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

      x.  On or about March 11, 2014, undercover officers purchased "spice" labeled as "Alien Loose Leaf" from the Gas Pipe retail location at 4420 Maple Avenue, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption" and "this product does not contain...any synthetic or naturally occurring cannabinoids," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance analogue FUB-PB-22, and the product was intended for individuals to smoke and ingest;

      y.  On or about March 11, 2014, undercover officers purchased "spice" labeled as "Assassin Revolution" from the Gas Pipe retail location at 2053 W. Northwest Highway, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption," "keep out of reach of children," and "for aromatherapy use only" when in fact it contained the synthetic cannabinoid and Schedule I controlled substance AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

      z.  On or about March 11, 2014, undercover officers purchased "spice" labeled as "Alien Loose Leaf" from the Gas Pipe retail location at 2053 W. Northwest Highway, Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption" and "this product does not contain...any synthetic or naturally occurring cannabinoids," when in fact it contained

the synthetic cannabinoid and Schedule I controlled substance analogue FUB-PB-22, and

the product was intended for individuals to smoke and ingest;

aa. On or about March 12, 2014, undercover officers purchased "spice" labeled

as "Assassin Revolution" from the Gas Pipe retail location at 9515 Skillman Street,

Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false

information such as: "not for human consumption," "keep out of reach of children," and

"for aromatherapy use only" when in fact it contained the synthetic cannabinoid and

Schedule I controlled substance AB-FUBINACA, and the product was intended for

individuals to smoke and ingest;

bb. On or about March 12, 2014, undercover officers purchased "spice" labeled

as "Wolf Pack Rage" from the Gas Pipe retail location at 9515 Skillman Street, Dallas,

Texas.  The packaging failed to contain adequate labeling and/or contained false

information such as: "for aromatherapy use only," "use one 3 gram bag for 500 square

foot area," "not for human consumption," and "does not contain any cannabinoids or

controlled substances," when in fact it contained the synthetic cannabinoid and Schedule

I controlled substance AB-FUBINACA, and the product was intended for individuals to

smoke and ingest;

cc. On or about March 12, 2014, undercover officers purchased "spice" labeled

as "Wolf Pack Rage" from the Gas Pipe retail location at 18613 Marsh Lane, Suite 500,

Dallas, Texas.  The packaging failed to contain adequate labeling and/or contained false

information such as: "for aromatherapy use only," "use one 3 gram bag for 500 square

foot area," "not for human consumption," and "does not contain any cannabinoids or

controlled substances," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

dd. On or about March 12, 2014, undercover officers purchased "spice" labeled as "Wolf Pack Rage" from the Gas Pipe retail location at 1725 Central Expressway, Plano, Texas. The packaging failed to contain adequate labeling and/or contained false information such as: "for aromatherapy use only," "use one 3 gram bag for 500 square foot area," "not for human consumption," and "does not contain any cannabinoids or controlled substances," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance AB-FUBINACA, and the product was intended for individuals to smoke and ingest;

ee. On or about March 12, 2014, undercover officers purchased "spice" labeled as "Alien Loose Leaf" from the Gas Pipe retail location at 1725 Central Expressway, Plano, Texas. The packaging failed to contain adequate labeling and/or contained false information such as: "not for human consumption" and "this product does not contain…any synthetic or naturally occurring cannabinoids," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance 5F-PB-22, and the product was intended for individuals to smoke and ingest;

ff. On or about April 30, 2014, undercover officers purchased "spice" labeled as "Plur" from the Gas Pipe retail location at 701 5th Street, Austin, Texas. The packaging failed to contain adequate labeling and/or contained false information such as: "put desired amount in an incense burner or dish," "use a lighter or match to ignite the

incense," "allow the exotic aroma to fill the air bringing you the feelings of peace, love, unity, and respect," and "not for human consumption," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance analogue THJ-2201, and the product was intended for individuals to smoke and ingest;

gg. On or about April 30, 2014, undercover officers purchased "spice" labeled as "Plur" from the Gas Pipe retail location at 8519 Burnet Road, Austin, Texas. The packaging failed to contain adequate labeling and/or contained false information such as: "put desired amount in an incense burner or dish," "use a lighter or match to ignite the incense," "allow the exotic aroma to fill the air bringing you the feelings of peace, love, unity, and respect," and "not for human consumption," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance analogue THJ-2201, and the product was intended for individuals to smoke and ingest;

hh. On or about May 6, 2014, undercover officers purchased "spice" labeled as "Plur" from the Gas Pipe retail location at 5707 Broadway Blvd., Garland, Texas. The packaging failed to contain adequate labeling and/or contained false information such as: "put desired amount in an incense burner or dish," "use a lighter or match to ignite the incense," "allow the exotic aroma to fill the air bringing you the feelings of peace, love, unity, and respect," and "not for human consumption," when in fact it contained the synthetic cannabinoid and Schedule I controlled substance analogue THJ-2201, and the product was intended for individuals to smoke and ingest;

32.     All in violation of 18 U.S.C. § 371, the penalty for which is set forth in 21 U.S.C. §§ 331 and 333(a)(2).

## Count Two
### Conspiracy to Distribute a Controlled Substance
(Violation of 21 U.S.C. § 846)

33.     Beginning on or about February 11, 2014, and continuing through on or about June 4, 2014, in the Northern District of Texas and elsewhere, defendants **Gas Pipe, Inc., Amy Lynn, Inc., Gerald (a.k.a. "Jerry") Shults, Amy Herrig,** and **Ryan Yarbro** did conspire together, and with other individuals known and unknown to the grand jury, to knowingly and intentionally manufacture and distribute mixtures or substances containing detectable amounts of a Schedule I controlled substance, to wit: AB-FUBINACA and 5F-PB-22, a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

34.     All in violation of 21 U.S.C. § 846, the penalty for which is set forth in 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Count Three
Distribution of a Controlled Substance Near a Public Playground
(Violation of 21 U.S.C. §§ 841(a)(1) and 860 and 18 U.S.C. § 2)

35.     On or about March 11, 2014, in the Northern District of Texas and

elsewhere, defendants **Gas Pipe, Inc., Amy Lynn, Inc., Gerald (a.k.a. "Jerry") Shults,**

**Amy Herrig,** and **Ryan Yarbro**, aided and abetted by each other, knowingly and

intentionally distributed a mixture and substance containing a detectable amount of a

Schedule I controlled substance, to wit:  AB-FUBINACA, in violation of 21 U.S.C. §

841(a), within 1,000 feet of a public playground.

36.     All in violation of 21 U.S.C. §§ 841(a)(1) and 860; and 18 U.S.C. § 2.

Count Four
Conspiracy to Distribute a Controlled Substance Analogue
(Violation of 21 U.S.C. § 846)

37.     Beginning on or about March 1, 2011, and continuing through on or about

June 4, 2014, in the Northern District of Texas and elsewhere, **Gas Pipe, Inc., Amy**

**Lynn, Inc., Gerald (a.k.a. "Jerry") Shults, Amy Herrig,** and **Ryan Yarbro** did

conspire together, and with other individuals, known and unknown to the grand jury, to

knowingly and intentionally manufacture and distribute mixtures or substances

containing detectable amounts of a Schedule I controlled substance analogue as defined

in 21 U.S.C. § 802(32), to wit: AM-2201, JWH-250, UR-144, XLR-11, PB-22, 5F-PB-

22, FUB-PB-22, and THJ-2201, knowing that the substances were intended for human

consumption as provided in 21 U.S.C. § 813, a violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(C).

38.     All in violation of 21 U.S.C. § 846, the penalty for which is set forth in 21

U.S.C. § 841(a)(1) and (b)(1)(C).

Counts Five through Twelve
Maintaining a Drug Involved Premise and Aiding and Abetting
(Violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2)

39.     On or about the dates for each count listed below in the Northern District of

Texas, the defendants **Gas Pipe, Inc.**, **Amy Lynn, Inc.**, **Gerald (a.k.a. "Jerry") Shults**,

and **Amy Herrig** aided and abetted each other, to knowingly and intentionally maintain a

place at the locations set forth below for the purpose of manufacturing and distributing a

Schedule I controlled substance and Schedule I controlled substance analogue as defined

in 21 U.S.C. § 802(32) knowing that the substances were intended for human consumption

as provided in 21 U.S.C. § 813.

| Count | Approximate Dates | Description of the Location | Substance Manufactured or Distributed |
|-------|-------------------|----------------------------|---------------------------------------|
| 5 | March 4, 2014 | 1407 Collins Street, Arlington, Texas | Schedule I controlled substance analogue FUB-PB-22 |
| 6 | March 10, 2014 | 6033 Camp Bowie Blvd., Fort Worth, Texas | Schedule I controlled substance AB-FUBINACA |
| 7 | March 10, 2014 | 130 E. Bardin Road, Arlington, Texas | Schedule I controlled substance AB-FUBINACA |
| 8 | March 11, 2014 | 2053 W. Northwest Highway, Dallas, Texas | Schedule I controlled substance AB-FUBINACA |
| 9 | March 12, 2014 | 9515 Skillman Street, Dallas, Texas | Schedule I controlled substance AB-FUBINACA |
| 10 | March 12, 2014 | 18613 Marsh Lane, Suite 500, Dallas, Texas | Schedule I controlled substance AB-FUBINACA |
| 11 | May 6, 2014 | 5707 Broadway Blvd., Garland, Texas | Schedule I controlled substance analogue THJ-2201 |
| 12 | June 4, 2014 | 5800 Maple Avenue, Dallas, Texas | Schedule I controlled substance analogue THJ-2201 |

40.     All in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2.

Count Thirteen
Maintaining Drug-Involved Premises in or Near Public Playground
(Violation of 21 U.S.C. §§ 856(a)(1) and 860 and 18 U.S.C. § 2)

41.     On or about March 11, 2014, in the Northern District of Texas, the

defendants **Gas Pipe, Inc.**, **Amy Lynn, Inc.**, **Gerald (a.k.a. "Jerry") Shults**, and **Amy**

**Herrig** aided and abetted each other, to knowingly and intentionally maintain a place at

4420 Maple Avenue, Dallas, Texas, for the purpose of distributing a Schedule I

controlled substance, to wit:  AB-FUBINACA, in violation of 21 U.S.C. § 856(a)(1);

within 1,000 feet of the real property comprising a public playground.

42.     All in violation of 21 U.S.C. § 856(a)(1) and 860; and 18 U.S.C. § 2.

Counts Fourteen through Sixteen
**Importation of a Controlled Substance Analogue and Aiding and Abetting**
(Violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2)

43.     On or about the dates listed in each count below, the defendants **Gas Pipe,**

**Inc.**, **Amy Lynn, Inc.**, **Gerald (a.k.a. "Jerry") Shults**, **Amy Herrig**, **Ryan Yarbro**, and

**Carolyn Settlemire** did aid and abet each other to intentionally and knowingly import

into the United States a mixture and substance containing detectable amounts of a

Schedule I controlled substance analogue as defined in 21 U.S.C. § 802(32) knowing that

the substances were intended for human consumption as provided in 21 U.S.C. § 813.

| Count | Approximate Date | Substance | Transaction |
|-------|-----------------|-----------|-------------|
| 14 | April 24, 2014 | THJ-2201 | Purchased kilogram quantity of the controlled substance analogue THJ-2201 from Debora Labs in Denmark, and the THJ-2201 was imported from Denmark or China |
| 15 | May 13, 2014 | THJ-2201 | Purchased kilogram quantity of the controlled substance analogue THJ-2201 from Debora Labs in Denmark, and the THJ-2201 was imported from Denmark or China |
| 16 | May 20, 2014 | THJ-2201 | Purchased kilogram quantity of the controlled substance analogue THJ-2201 from Debora Labs in Denmark, and the THJ-2201 was imported from Denmark or China |

44.     All in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2.

Count Seventeen
Conspiracy to Commit Money Laundering
[Violation of 18 U.S.C. § 1956(h)]

45.     From at least on or about March 1, 2011, through June 4, 2014, in the

Northern District of Texas and elsewhere, the defendants **Gas Pipe, Inc.**, **Amy Lynn,**

**Inc.**, **Gerald (a.k.a. "Jerry") Shults**, **Amy Herrig**, **Carolyn Settlemire**, **Rapids Camp**

**Lodge, Inc.**, and **Ridglea Complex Management, Inc.** did knowingly combine,

conspire, and agree with each other and with other persons known and unknown to the

grand jury to commit offenses against the United States in violation of 18 U.S.C. §§ 1956

and 1957, to wit:

a.     To knowingly conduct and attempt to conduct financial transactions

affecting interstate commerce and foreign commerce, which transactions involved the

proceeds of specified unlawful activity, that is, conspiracy to distribute a controlled

substance, conspiracy to distribute a controlled substance analogue, wire fraud, mail

fraud, maintaining a drug-involved premise, and importation of a controlled substance

analogue, knowing that the transactions were designed in whole or in part to conceal and

disguise the nature, location, source, ownership, and control of the proceeds of specified

unlawful activity, and that while conducting and attempting to conduct such financial

transactions, knew that the property involved in the financial transactions represented the

proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

b.     To transport, transmit and transfer and attempt to transport, transmit and

transfer a monetary instrument and funds from a place in the United States to and through

a place outside the United States with the intent to promote the carrying on of specified

unlawful activity, in violation of 18 U.S.C. §1956(a)(2)(A); and

    c.      To knowingly engage and attempt to engage, in monetary transactions by,

through or to a financial institution, affecting interstate and foreign commerce, in

criminally derived property of a value greater than $10,000, with such property having

been derived from a specified unlawful activity, that is, conspiracy to distribute a

controlled substance, conspiracy to distribute a controlled substance analogue, wire fraud,

mail fraud, maintaining a drug-involved premise, importation of a controlled substance

analogue, and continuing a criminal enterprise, in violation of 18 U.S.C. § 1957.

Manner and Means

    46.    It was part of the conspiracy that the defendants and other persons both

known and unknown to the Grand Jury would:

    a.   Transfer the proceeds earned from the conspiracy to distribute a controlled

substance, conspiracy to distribute a controlled substance analogue, wire fraud, mail

fraud, maintaining a drug-involved premise, and importation of a controlled substance

analogue from multiple Wells Fargo bank accounts to various financial accounts

maintained at UBS Financial Services;

    b.   Use and dispose the proceeds acquired from the conspiracy to distribute a

controlled substance, conspiracy to distribute a controlled substance analogue, wire fraud,

mail fraud, maintaining a drug-involved premise, and importation of a controlled

substance analogue to purchase various materials, equipment, and real property to

continue the manufacturing and distribution of "spice" in the Northern District of Texas and elsewhere;

      c.  By concealing the source and nature of the proceeds derived from the conspiracy to distribute a controlled substance, conspiracy to distribute a controlled substance analogue, wire fraud, mail fraud, maintaining a drug-involved premise, and importation of a controlled substance analogue by purchasing assets through a seemingly unrelated and totally different business entity; and

      d.  Comingling the proceeds derived from the conspiracy to distribute a controlled substance, conspiracy to distribute a controlled substance analogue, wire fraud, mail fraud, maintaining a drug-involved premise, and importation of a controlled substance analogue with legitimately earned assets in an effort to conceal the true source and nature of the criminal derived funds;

47.    All in violation of 18 U.S.C. § 1956(h), the penalty for which is set forth in 18 U.S.C. § 1956(a)(1).

## Forfeiture Notice
[21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1)]

Upon conviction for the offenses alleged in Counts Two through Sixteen of this indictment and pursuant to 21 U.S.C. § 853(a), the defendants, **Gas Pipe, Inc., Amy Lynn, Inc., Gerald (a.k.a. "Jerry") Shults, Amy Herrig, Ryan Yarbro,** and **Carolyn Settlemire** shall forfeit to the United States of America all property, real or personal, constituting, or derived from, the proceeds obtained, directly or indirectly, as the result of the offense; and any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense.

Upon conviction for any of the offenses alleged in Count Seventeen of this Indictment and pursuant to 18 U.S.C. § 982(a)(1), the defendants, **Gas Pipe, Inc., Amy Lynn, Inc., Gerald (a.k.a. "Jerry") Shults,** Amy Herrig, **Carolyn Settlemire**, **Rapids Camp Lodge, Inc.**, and **Ridglea Complex Management, Inc.** shall forfeit to the United States all property, real or personal, involved in, or traceable to property involved in, the respective offense, and includes, but is not limited to the following

The specific property the government seeks to forfeit upon conviction of Counts Two through Seventeen includes, but is not limited to, the following:

1. The proceeds obtained as a result of the offense in Count 2, in the form of a money judgment. [sought from **all defendants** charged in this count]

2. The proceeds obtained as a result of the offense in Count 3, in the form of a money judgment. [sought from **all defendants** charged in this count]

3. The proceeds obtained as a result of the offense in Count 4, in the form of a money judgment. [sought from **all defendants** charged in this count]

4. The proceeds obtained as a result of the offense in Count 5, in the form of a money

judgment.  [sought from **all defendants** charged in this count]

5.   The proceeds obtained as a result of the offense in Count 6, in the form of a money judgment.  [sought from **all defendants** charged in this count]

6.   The proceeds obtained as a result of the offense in Count 7, in the form of a money judgment.  [sought from **all defendants** charged in this count]

7.   The proceeds obtained as a result of the offense in Count 8, in the form of a money judgment.  [sought from **all defendants** charged in this count]

8.   The proceeds obtained as a result of the offense in Count 9, in the form of a money judgment.  [sought from **all defendants** charged in this count]

9.   The proceeds obtained as a result of the offense in Count 10, in the form of a money judgment.  [sought from **all defendants** charged in this count]

10.  The proceeds obtained as a result of the offense in Count 11, in the form of a money judgment.  [sought from **all defendants** charged in this count]

11.  The proceeds obtained as a result of the offense in Count 12, in the form of a money judgment.  [sought from **all defendants** charged in this count]

12.  The proceeds obtained as a result of the offense in Count 13, in the form of a money judgment.  [sought from **all defendants** charged in this count]

13.  The proceeds obtained as a result of the offense in Count 14, in the form of a money judgment.  [sought from **all defendants** charged in this count]

14.  The proceeds obtained as a result of the offense in Count 15, in the form of a money judgment.  [sought from **all defendants** charged in this count]

15.  The proceeds obtained as a result of the offense in Count 16, in the form of a money judgment.  [sought from **all defendants** charged in this count]

16.  The proceeds obtained as a result of the offense in Count 17, in the form of a money judgment.  [sought from **all defendants** charged in this count]

17.  Real property located at 1407 North Collins Street, Arlington, Texas;

18.  Real property located at 4418 Maple Avenue, Dallas, Texas;

19. Real property located at 701 E. 5th Street, Austin, Texas;

20. Real property located at 9515 Skillman Street, Dallas, Texas;

21. Real property located at 5800 Maple Avenue, Dallas, Texas;

22. Real property located at 8519 Burnet Road, Austin, Texas;

23. Real property located at 18613 Marsh Lane, Dallas, Texas;

24. Real property located at 130 E. Bardin Road, Arlington, Texas;

25. Real property located at 5707 Broadway Boulevard, Garland, Texas;

26. Real property located at 5709 Broadway Boulevard, Garland, Texas;

27. Real property located at 3341 Winthrop Avenue, Fort Worth, Texas;

28. Real property located at 28927 Southeast Woods Road, Eagle Creek, Oregon;

29. Real property located at 3320 Harvard Avenue, Highland Park, Texas;

30. Real property located at 5502 East R.L. Thornton Freeway, Dallas, Texas;

31. Real property located at 5506 East R.L. Thornton Freeway, Dallas, Texas;

32. Real property located at 3309 Winthrop Avenue, Fort Worth, Texas;

33. Real property located at 3327 – 3345 Winthrop Avenue, Fort Worth, Texas;

34. Real property located at 6025 Camp Bowie Boulevard, Fort Worth, Texas;

35. Real property located at 6033 Camp Bowie Boulevard, Fort Worth, Texas;

36. Real property located at 407 CR 1609, Clifton, Texas;

37. 1981 Cessna Conquest 441 fixed wing multi-engine aircraft (Tail No. N441SX);

38. 1999 Cessna 208 Caravan fixed wing single-engine aircraft (Tail No. N208AV);

39. 1964 Dehavilland Beaver DHC-2 MK 1 (Tail No. N30PL);

40. 1996 Pilatus PC-12 fixed wing single-engine aircraft (Tail No. N217EB);

41. 1951 Piper PA-18 Cub fixed wing single-engine aircraft (Tail No. N1392A);

42. 1978 Delta Marine fiberglass fishing vessel named "Sea Witch;"

43. $6,210.29 in U.S. currency seized on June 4, 2014;

44. $7,072.63 in U.S. currency seized on June 4, 2014;

45. $4,102.06 in U.S. currency seized on June 4, 2014;

46. $10,870.61 in U.S. currency seized on June 4, 2014;

47. $1,329.00 in U.S. currency seized on June 4, 2014;

48. $1,415.00 in U.S. currency seized on June 4, 2014;

49. $3,541.32 in U.S. currency seized on June 4, 2014;

50. $8,017.59 in U.S. currency seized on June 4, 2014;

51. $8,242.00 in U.S. currency seized on June 4, 2014;

52. $5,658.37 in U.S. currency seized on June 4, 2014;

53. $9,781.76 in U.S. currency seized on June 4, 2014;

54. All funds in UBS Financial Services account ending in 6235 (approx. value of $826,644.61);

55. All funds in UBS Financial Services account ending in 5092 (approx. value of $604,168.82);

56. All funds in UBS Financial Services account ending in 0852 (approx. value of $80,117.03);

57. All funds in UBS Financial Services account ending in 4980 (approx. value of

$814,845.67);

58. All funds in UBS Financial Services account ending in 8258 (approx. value of $1,526,274.41);

59. All funds in UBS Financial Services account ending in 4875 (approx. value of $5,661,068.81);

60. All funds in UBS Financial Services account ending in 4596 (approx. value of $3,888,946.67);

61. All funds in UBS Financial Services account ending in 8402 (approx. value of $1,808,332.82);

62. All funds in UBS Financial Services account ending in 7514 (approx. value of $108,496.93);

63. $41,183.03 in funds seized from Wells Fargo Bank account ending in 3677;

64. $76,448.21 in funds seized from Wells Fargo Bank account ending in 8825;

65. $72,017.40 in funds seized from Wells Fargo Bank account ending in 9088;

66. $53,072.55 in funds seized from Wells Fargo Bank account ending in 3685;

67. $51,305.77 in funds seized from Wells Fargo Bank account ending in 3636;

68. $63,339.12 in funds seized from Wells Fargo Bank account ending in 3693;

69. $121,194.84 in funds seized from Wells Fargo Bank account ending in 2088;

70. $19,321.72 in funds seized from Wells Fargo Bank account ending in 2112;

71. $58,349.15 in funds seized from Wells Fargo Bank account ending in 2096;

72. $22,795.55 in funds seized from Wells Fargo Bank account ending in 6999;

73. $5,891.99 in funds seized from Wells Fargo Bank account ending in 9591;

74. $10,801.29 in funds seized from Wells Fargo Bank account ending in 2554;

75. $378.89 in funds seized from Wells Fargo Bank account ending in 0014;

76. $39,265.95 in funds seized from Wells Fargo Bank account ending in 3820;

77. $122,473.50 in funds seized from Wells Fargo Bank account ending in 9344;

78. $20,545.04 in funds seized from Wells Fargo Bank account ending in 2104;

79. $94,992.31 in funds seized from Wells Fargo Bank account ending in 1866;

80. Lots 2 & 3, Block 1; Lots 1, 2, 3, 4, 5 & 6, Block 2; and Lots 2 & 3, Block 3 within the Chuck-A-Lou Subdivision, a subdivision of Lot 3, U.S. Survey 7410, within Sections 4,5,8 & 9, Township 18 South, Range 44 West, Seward Meridian, aggregating 11.791 acres more or less;

81. Lot 5, Block 3, Chuck-A-Lou Subdivision, according to the official plat thereof, filed under Plat Number 91-6, Records of the Kvichak Recording District, Third Judicial District, State of Alaska, A.P.N. 37-016-116A;

82. Lots 7, 8, 9, 10, 11, 12, Block 3, Chuck-A-Lou Subdivision, Plat 91-6 a subdivision of Lot 3, U.S. Survey 7410, within protracted Sec. 4, 5, 8, and 9, T. 18 S., R. 44 W., Seward Meridian, containing 1.617 acres, Kvichak Recording District, Third Judicial District, State of Alaska;

83. Lot 7, U.S. Survey 3539, Records of the Kvichak Recording District, Third Judicial District, State of Alaska;

84. The Southwest one-quarter of the Southeast one-quarter of the Southeast one-quarter, (SW1/4 SE1/4 SE1/4) and the Southeast one-quarter of the Southwest one-quarter of the Southeast one-quarter (SE1/4 SW1/4 SE1/4) in unsurveyed Section 36, Township 31 South, Range 29 West, Seward Meridian, Kodiak Recording District, Third Judicial District, State of Alaska, also known as TL 3608 Tr #3;

85. Lot 6, Tract "B," of the Alaska Native Claims Settlement Act (ANCSA) Section 14(e), Tracts at Karluk, Alaska, according to Plat No. 2000-3, located in the Kodiak Recording District, Third Judicial District, State of Alaska;

86. Lot 13, Block 3, Chuck-A-Lou Subdivision, a subdivision of Lot 3, U.S. Survey 7410, within protracted Sec. 4, 5, 8, & 9, T. 18 S., R. 44 W., Seward Meridian,

containing 1.617 acres, Records of the Kvichak Recording District, Third Judicial District, State of Alaska;

87. Lot 6, Block 3, of Chuck-A-Lou Subdivision, according to Plat 9106, filed in the Kvichak Recording District, Third Judicial District, State of Alaska;

88. Lot 1, Block 3, Chuck-A-Lou Subdivision, according to the official plat thereof, filed under Plat Number 91-6 Third, Records of the Kvichak Recording District, Third Judicial District, State of Alaska;

[NOTHING FURTHER ON THIS PAGE]

A TRUE BILL:

_____

FOREMAN


JOHN R. PARKER
Acting United States Attorney

_____

BRIAN D. POE
Assistant United States Attorney
Northern District of Texas
Texas State Bar No.  24056908
1100 Commerce St., Third Floor
Dallas, Texas 75242-1699
Telephone:   214.659.8600
E-mail:      brian.poe@usdoj.gov

_____  for

ERRIN MARTIN
Assistant United States Attorney
Northern District of Texas
Texas State Bar No. 24032572
1100 Commerce St., Third Floor
Dallas, Texas 75242-1699
Telephone:   214.659.8600
E-mail:      errin.martin@usdoj.gov


JOHN J. de la GARZA III
Assistant United States Attorney
Texas State Bar No. 00796455
1100 Commerce St., Suite 300
Dallas, Texas  75242
Telephone:   214.659.8600
E-Mail:      john.delagarza@usdoj.gov



SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

GAS PIPE, INC. (7)
AMY LYNN, INC. (8)
GERALD SHULTS (9)
(A.K.A. "JERRY")
AMY HERRIG (10)
ROLANDO ROJAS (11)
(A.K.A. "RO")
RYAN YARBRO (12)
JOHN BEN LINCOLN (13)
CHRISTOPHER RAMIREZ (14)
DANIEL CAILLIER (15)
KENDALL SILVA (16)
ELIZABETH WALKER (17)
BRIDGETT PAYROT (18)
JASON LYON (19)
JOSHUA CAMPBELL (20)
MICK CLARK (21)
BRANDON SCHUBERT (22)
JACKIE RANDALL-KING (23)
HOLLY PATTERSON (24)
BRAD BADER (25)
TRAVIS LOVIN (26)
JENNIFER DUNN (27)
PATRICK SHANAHAN (28)
CAROLYN SETTLEMIRE (29)
TOM SCOTT (30)
RAPIDS CAMP LODGE, INC. (31)
RIDGLEA COMPLEX MANAGEMENT, INC. (32)

## SEALED SUPERSEDING INDICTMENT

**(Supersedes Indictment returned on August 5, 2014)**

18 U.S.C. § 371
Conspiracy to Defraud the United States

21 U.S.C. § 846
Conspiracy to Distribute a Controlled Substance

21 U.S.C. §§ 841(a)(1) and 860 and 18 U.S.C. § 2
Distribution of a Controlled Substance Near a Public Playground

21 U.S.C. § 846
Conspiracy to Distribute a Controlled Substance Analogue

21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2
Maintaining a Drug Involved Premise and Aiding and Abetting

21 U.S.C. §§ 856(a)(1) and 860 and 18 U.S.C. § 2
Maintaining Drug-Involved Premises in or Near Public Playground

21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2
Importation of a Controlled Substance Analogue and Aiding and Abetting

18 U.S.C. § 1956(h)
Conspiracy to Commit Money Laundering

21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1)
Forfeiture Notice

17 Counts

---

A true bill rendered

--------------------------------------------------------------------------------

DALLAS                                                              FOREPERSON

Filed in open court this _6th_ day of May, 2015.

--------------------------------------------------------------------------------

Clerk

**Warrants to be Issued:**

**GERALD (a.k.a. "Jerry")SHULTS (9), AMY HERRIG (10), ROLANDO (a.k.a. "Ro") ROJAS (11), RYAN YARBRO (12), JOHN BEN LINCOLN (13), CHRISTOPHER RAMIREZ (14), DANIEL CAILLIER (15), KENDALL SILVA (16), ELIZABETH WALKER (17), BRIDGETT PAYROT (18), JASON LYON (19) JOSHUA CAMPBELL (20), MICK CLARK (21), BRANDON SCHUBERT (22) JACKIE RANDALL-KING (23), HOLLY PATTERSON (24), BRAD BADER (25) TRAVIS LOVIN (26), JENNIFER DUNN (27), PATRICK SHANAHAN (28), CAROLYN SETTLEMIRE (29), TOM SCOTT (30)**

---

UNITED STATES ~~DISTRICT~~/MAGISTRATE JUDGE
(3:14-CR-00298-M)